**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:22-CV-185** |
| | ) | |
| **v.** | ) | **Judge ________________** |
| | ) | |
| **MPS AA-12, 12-gauge machine guns with the following serial numbers: 100-2, 100-3, 100, 101, 104, 105, 109, 111, 112, 113, 114, 115, and one with no serial number,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Comes now the plaintiff, United States of America, by and through its attorneys, Francis Hamilton III, United States Attorney for the Eastern District of Tennessee, and Gretchen Mohr, Assistant United States Attorney, and brings this complaint and alleges as follows in accordance with Rule G (2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

## NATURE OF THE ACTION

1. In this *in rem* civil action, the United States of America seeks forfeiture of the following items: MPS AA-12, 12-gauge machine guns with the following serial numbers: 100-2, 100-3, 100, 101, 104, 105, 109, 111, 112, 113, 114, 115, and one with no serial number (hereinafter "defendant properties").

2. The United States of America seeks forfeiture of the defendant properties as firearms involved in a violation of 26 U.S.C. § 5861 and therefore forfeitable pursuant to 26 U.S.C. § 5872.

**THE DEFENDANT *IN REM***

3. On July 19, November 9, and November 28, 2018, the defendant properties were seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF"). The properties were seized from Gerald BABER ("Baber") doing business as Military Police System ("MPS"), the owner and class 3 Federal Firearms Licensee ("FFL") located at 1345 Enterprise Road, Piney Flats, Tennessee 37686 and from Steven Herberth ("Herberth"), owner and class 3 Federal Firearms Licensee located at 3940 Bardstown Road, Suite 1A, Louisville, Kentucky.

4. The defendant properties are in the custody of the BATF Knoxville, Tennessee Field Office.

**JURISDICTION AND VENUE**

5. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant properties pursuant to 26 U.S.C. § 5872. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant properties pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture of the defendant properties occurred in this district. Upon the filing of this complaint, the plaintiff requests that the Clerk issue an Arrest Warrant *in Rem* pursuant to Supplemental Rule G(3)(b)(i). The plaintiff will execute the warrant upon the defendant properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(b) because the properties are located in this district.

**BASIS FOR FORFEITURE**

8. The United States of America seeks forfeiture of the defendant properties pursuant to 26 U.S.C. § 5872 for violations of 26 U.S.C. § 5861 and pursuant to procedures set out in Rule G (2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, 19 U.S.C. § 1602, *et seq*.

**FACTS**

9. As set forth in detail in the Affidavit of Special Agent, Rebecca Bobich, Bureau of Alcohol, Tobacco, Firearms and Explosives, has determined that Gerald Baber doing business as Military Police System ("MPS") and Steven Herberth and other parties unknown have committed violations of federal law including 26 U.S.C. § 5861.

**CLAIM FOR RELIEF**

10. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 9 above.

11. Title 26 U.S.C. § 5861(a) makes it unlawful for anyone to engage in the business as a manufacturer or importer or, or dealer in, firearms without having paid the special (occupational) tax ("SOT") required by Section 5801 or registering with the Attorney General as required by Section 5802.

12. Title 26 U.S.C. § 5861(b) makes it unlawful for anyone to receive or possess a firearm transferred to them in violation of the National Firearms Act, 26 U.S.C. § 5801 et seq. ("NFA")

13. Title 26 U.S.C. § 5861(c) makes it unlawful for anyone to receive or possess a firearm made in violation of the NFA.

14. Title 26 U.S.C. § 5861(d) makes it unlawful for anyone to receive or possess a firearm not registered to them in that National Firearms Registration and Transfer Record ("NFRTR").

15. Title 26 U.S.C. § 5861(e) makes it unlawful for anyone to transfer a firearm in violation of the NFA.

16. Title 26 U.S.C. § 5861(f) makes it unlawful for anyone to make a firearm in violation of the NFA.

17. 26 U.S.C. § 5861(i) makes it unlawful for anyone to receive or possess a firearm that is not identified by a serial number as required by the NFA.

18. Title 26 U.S.C. § 5861(j) makes it unlawful for anyone to transport, deliver, or receive a firearm in interstate commerce which has not been registered as required by the NFA.

19. Title 26 U.S.C. § 5861(l) makes it unlawful for anyone to make, or cause the making of, a false entry on an application, return, or record required by the NFA.

20. The defendant properties were involved in a violation of 26 U.S.C. § 5861(f) when they were manufactured by an entity that had not paid the SOT or registered with the Attorney General.

21. MPS's receipt and possession of the defendant properties violated 26 U.S.C. §§ 5861(b), (c), (d), (i), and (j) because they were: (1) manufactured in violation of the NFA; (2) transferred to it in violation of the NFA; (3) were not registered to it in the NFRTR; (4) were not registered at all; and (5) were not identified by a serial number as required by the NFA.

22. The defendant properties were involved in violations of 26 U.S.C. §§ 5861(e) and (j) when they were transferred between MPS and other entities without BATF's prior approval as required by the NFA.

23. Finally, MPS violated 26 U.S.C § 5861(l) when it filed notices of manufacture (ATF Forms 2) with ATF falsely identifying itself as the manufacturer of the defendant properties, knowing that it was not the manufacturer.

24. Pursuant to 26 U.S.C. § 5872(a), any firearm involved in a violation of the NFA shall be subject to seizure and forfeiture.

25. The defendant properties *in rem*, MPS AA-12, 12-gauge machine guns with the following serial numbers: 100-2, 100-3 100, 101, 104, 105, 109, 111, 112, 113, 114, 115, and one with no serial number, were all in violation of 26 U.S.C. §§ 5861(b), (c), (d), (e), (i), (j) and (l) and are therefore liable to condemnation and forfeiture to the United States for its use, in accordance with 26 U.S.C. § 5872(a).

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that:

(1) The Clerk issue a Warrant for Arrest *In Rem* for the defendant properties;

(2) The defendant properties be condemned and forfeited to the United States of America in accordance with the provisions of law;

(3) Notice of this action be given to all persons known or thought to have an interest in, or right against the defendant properties; and

(4) Plaintiff be awarded its costs in this action and for such other necessary and equitable relief as this Court deems proper.

Respectfully submitted,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: ______________________

GRETCHEN MOHR
NY Bar No. 5064704
Assistant United States Attorney
800 Market Street, Ste. 211
Knoxville, Tennessee 37902
gretchen.mohr@usdoj.gov
(865) 545-4167

## VERIFICATION

I, Rebecca Bobich, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, hereby verify and declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint *In Rem* and in the accompanying Affidavit are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are from information gathered by law enforcement officers, as well as my investigation of this case with BATF.

I hereby verify and declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of May 2022.

Rebecca Bobich, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed to before me this 24th day of May, 2022.

JEANETTE E. SOREY STATE OF TENNESSEE NOTARY PUBLIC KNOX COUNTY

Notary Public
My Commission Expires: 03/07/2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 3:22-CV-185** |
| **Plaintiff,** | ) | |
| | ) | **Judge ________________** |
| **v.** | ) | |
| | ) | |
| **MPS AA-12, 12-gauge machine guns with the following serial numbers: 100-2, 100-3, 100, 101, 104, 105, 109, 111, 112, 113, 114, 115, and one with no serial number,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT *IN REM***

I, Rebecca Bobich, Bureau of Alcohol, Tobacco, Firearms and Explosives, Senior Special Agent, being duly sworn, depose and states the following is true and correct to the best of my knowledge:

**PROFESSIONAL TRAINING AND EXPERIENCE OF AFFIANT**

1. I am a Senior Special Agent ("SSA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and I have worked in this capacity since August of 1992. I am currently assigned to the ATF Knoxville Field Office, located in Knoxville, Tennessee.

2. As a result of my employment with ATF, I have successfully completed the required training courses at the Federal Law Enforcement Training Center located in Glynco, Georgia. I have also attended additional training and have been qualified as an Interstate Nexus Specialist and an ATF Tactical Medic.

3. As a result of my training and experience as a SSA for the ATF, I have received specialized training regarding the investigation and enforcement of federal firearm, explosive and drug violations and I have conducted numerous investigations regarding individuals involved in illegal firearm, explosive and drug activities. I have participated in hundreds of investigations involving federal firearms offenses including violations of 26 U.S.C. § 5861. Based upon my training and experience, your Affiant knows that persons engaged in the business of manufacturing machine guns must first pay a Special Occupational Tax ("SOT") and register as a manufacturer with the Attorney General as required by 26 U.S.C. §§ 5801 and 5802; 27 C.F.R. § 479.31; Manufacturers must engrave or stamp a unique serial number on the machine gun frame or receiver in a manner not readily susceptible to obliteration or alteration, and mark the frame, receiver, or barrel with the manufacturer identification information as required by 26 U.S.C. § 5842(a); 27 C.F.R. § 479.102; Manufacturers must report and register the machine gun in the National Firearms Registration and Transfer Record ("NFRTR") by the close of the next business day after the machine gun is manufactured as required by 26 U.S.C. § 5841(b); 27 C.F.R. §§ 479.101 and 479.103; and manufacturers cannot transfer a machine gun to any other person or entity unless an application to transfer the machine gun has been filed with and approved by the ATF in advance of the transfer as required by 26 U.S.C. §§ 5812, 5841(b) and (c), and 5861(d).

4. Based upon the same specialized training and experience your Affiant knows that it is a violation of 26 U.S.C. § 5861(a) for any person to engage in business as a manufacturer or importer of, or dealer in firearms as defined by the National Firearms Act, 26 U.S.C. § 5801, et seq. ("NFA"), without having paid the SOT required by section 5801 or having registered with the Attorney General as required by section 5802; it is a violation of 26 U.S.C. § 5861(b) for any

person to receive or possess a firearm transferred to him in violation of the NFA; it is a violation of 26 U.S.C. § 5861(c) for any person to receive or possess a firearm made in violation of the NFA; it is a violation 26 U.S.C. § 5861(d) for any person to possess a firearm which is not registered to him in the NFRTR; it is a violation of 26 U.S.C. § 5861(e) for any person to transfer a firearm in violation of the NFA; it is a violation of 26 U.S.C. § 5861(f) for any person to make a firearm in violation of the NFA; it is a violation of 26 U.S.C. § 5861(i) for any person to receive or possess a firearm which is not identified by a serial number as required by the NFA; it is a violation of 26 U.S.C. § 5861(j) for any person to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by the NFA; and it is a violation of 26 U.S.C. § 5861(l) for any person to make, or cause the making of, a false entry on any application, return or record required by the NFA, knowing such entry to be false.

5. Except as noted, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials.

## FACTS OF INVESTIGATION

6. On June 28, 2018, ATF Industry Operations Investigators ("IOIs") conducted a Federal Firearms Licensee ("FFL") compliance inspection at Military Police System ("MPS") located at 1345 Enterprise Road, Piney Flats, Tennessee 37686, owned by Gerald Baber ("Baber"). At the time, MPS possessed a Type 07 Federal Firearms License to manufacture firearms, had paid the SOT required by 26 U.S.C. § 5801, and was registered as a manufacturer with the Attorney General as required by 26 U.S.C. § 5802, which allowed it to manufacture NFA firearms including machine guns. "Machine gun" is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 27 C.F.R. § 479.11. The term "machine gun" includes

the "frame or receiver" of the machine gun, and "any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." Therefore, a machine gun frame or receiver ***is as a machine gun itself***, even when not assembled into a fully functioning weapon, as is any combination of parts from which a person could assemble a machine gun. 26 U.S.C. § 5845(b). At all relevant times, the term "frame or receiver" meant the part of a firearm that provides housing for the hammer, bolt or breechblock and firing mechanism. 27 C.F.R. § 479.11.

7. During the inspection of MPS, the IOIs observed thirteen (13) AA-12, 12-gauge machine guns marked with MPS as the manufacturer, with the following serial numbers 100-2, 100-3, 101, 104, 105, 109, 111, 112, 113, 114, 115, Black Ops 115, and one with no markings. An AA-12 is a machine gun that shoots more than one shotgun shell automatically without manual reloading by a single function of the trigger. The AA-12 with serial number Black Ops 115 ("Black Ops 115") was not registered in the NFRTR and was not entered into MPS's Federal Firearms Acquisition and Disposition Book ("A&D Book"). MPS was unable to produce an ATF Form 2 – Notice of Firearms Manufactured or Imported – and unable to produce a NFA tax stamp. MPS's A&D Book also indicated that an additional AA-12 machine gun marked with serial number 100 ("Machine Gun 100") had been transferred to Falcon Defense Group, FFL, owner Steven Herberth ("Herberth"), but there was no approved ATF Form 3 – Application for Tax-Exempt Transfer of Firearm to Special Occupational Taxpayer – authorizing that transfer and no date in the A&D Book for when Machine Gun 100 was transferred. I was then contacted by the IOIs and informed of the two AA-12 machine guns that needed to be taken into ATF custody.

8. On July 19, 2018, myself, the IOIs and ATF Special Agent James Makemson ("Makemson") met with Baber at the MPS business premise to take custody of Black Ops 115

for its involvement in violations of 26 U.S.C. §§ 5861(b), (c), (d), and (i). At that time, Baber said MPS manufactured all the parts for the AA-12 machine guns on site and then transferred them to BC Engineering, Inc. ("BCE") located at 5895 E AJ Highway, Russellville, Tennessee 37860 to be assembled into operable machine guns. BCE is owned by Boje Cornils ("Boje").

9. While at the business of MPS, an IOI and S/A Makemson interviewed MPS employee Sandra O'Ferrall ("O'Ferrall"), who provided a complete list of the parts used to make the AA-12 machine guns and showed the IOI and S/A Makemson the actual parts used to make the AA-12 machineguns. Several photographs were taken by S/A Makemson, to include a photograph of the right-side plate, which is the "receiver" of the AA-12 machine gun. At that time, both the IOI and S/A Makemson observed a crate with approximately one hundred (100) of the right-side plates.

10. On the same date, after interviewing BABER, I took into ATF custody one AA-12 machine gun marked with serial number Black Ops 115. BABER stated he did not have any registration paperwork (ATF Form 2) for the machine gun marked with serial number Black Ops 115 and could not locate an NFA tax stamp for this machine gun. BABER then completed an ATF Form 3400.1 – Consent to Forfeiture or Destruction of Property and Waiver of Notice and an ATF Form 3400.23 – Receipt of Property and Other Items for this machine gun.[1] He signed and dated both forms.[2]

[1] Because BABER gave up any and all interest in Machine Gun Black Ops 115, the United States does not seek forfeiture of said gun. However, the information is included to fully convey the background of this case.

[2] On August 6, 2018, I submitted Black Ops 115 to the ATF Firearms Technology Criminal Branch ("FTCB") for examination. The FTCB confirmed that Black Ops 115 is a machine gun as defined at 26 U.S.C. § 5845(b) because it shoots automatically more than one shot, without manual reloading, by a single function of the trigger and incorporates a machine gun "receiver." FTCB also determined that Black Ops 115 is not marked with a serial number and manufacturer's information in the manner required

11. On August 31, 2018, I interviewed Dorothy Cornils ("Dottie"), wife of BCE's owner, Boje Cornils. Dottie stated BCE did not obtain a Type 07 Manufacturing FFL or pay the SOT required to manufacture NFA firearms until 2009, but had nonetheless assembled a number of AA-12 machine guns for MPS prior to obtaining its FFL on October 1, 2009 and paying the SOT on January 25, 2011. Dottie also confirmed the AA-12 machine guns BCE assembled for MPS did not have serial numbers or manufacturer's markings and were not registered in the NFRTR when BCE assembled them.

12. On November 6, 2018, I interviewed Boje, who admitted BCE began assembling AA-12 machine guns for MPS in the early 2000s, before BCE obtained a Type 07 Manufacturing FFL, before it paid the SOT, and before it registered as a manufacturer with the Attorney General. After assembling the AA-12 machine guns, Boje stated he had marked some of the machine guns with serial numbers and MPS's identification information on the structural grip bracket and then transferred them to MPS. However, Boje also stated he had assembled additional AA-12 machine guns that he transferred to MPS without any serial number and/or markings.

13. On November 9, 2018, ATF Special Agent Jason Dobbs ("Dobbs") and I interviewed Baber at his place of business. MPS employees Sandra O'Ferrall ("O'Ferrall") and William Mitchell ("Mitchell") were also present. Prior to the interview, Baber and O'Ferrall signed and dated an ATF Form 3220.1 – Consent to Search form. During this interview Baber admitted MPS did not manufacture the AA-12 machine guns at his place of business, but MPS did make many of the other parts to the firearm on site. Baber also admitted MPS did not manufacture the "receiver" for the AA-12 machine guns. Instead, MPS contracted with another

---

by 26 U.S.C. § 5842 and 27 CFR § 479.102. Specifically, Black Ops 115 is marked on the structural grip bracket and not on the "frame or receiver."

company, Universal Tool and Engineering ("Universal Tool"), located in Johnson City, Tennessee, to manufacture the "receivers." I completed a check in the Federal Licensing System ("FLS") and was able to determine that Universal Tool did not have a Type 07 Manufacturing FFL and did not pay the SOT or register with the Attorney General when it manufactured those AA-12 machine gun "receivers." Universal Tool then transferred the "receivers" to BCE. The "receivers" were not registered with ATF in the NFRTR and the transfer was not approved by ATF. In addition, the "receivers" were not marked with any serial number or manufacturer's marking at the time of their transfer from Universal Tool to BCE.

14. After finding out this information, I contacted Boje via telephone and asked him about the "receivers" and he confirmed the ejection port[3] was already cut and the three holes for the machine gun fire-control was already completed on the "receivers" before he obtained them from MPS/Universal Tool.

15. On the same date, O'Ferrall retrieved the crate of AA-12 machine gun "receivers." I counted them and there was a total of one hundred and eight (108) AA-12 machine gun "receivers" with no markings. At that time, Baber signed and dated an ATF Form 3400.1 – Consent to Forfeiture or Destruction of Property and Waiver of Notice and signed and dated ATF Form 3400.23 – Receipt of Property and Other Items for one hundred and eight (108) unmarked AA-12 machine gun "receivers".[4] A search of the NFRTR showed these AA-12 machine gun "receivers" had not been registered. Baber could also not provide ATF with an

---

[3] The ejection port is an opening of the receiver of the firearm through which the expended cases are thrown from the piece after the firing.

[4] Because BABER gave up any and all interest in the (108) unmarked AA-12, 12-gauge machine gun "receivers", the United States does not seek forfeiture of those items. However, the information is included to fully convey the background of this case.

ATF Form 2 – Notice of Firearms Manufactured or Imported and/or the ATF Tax Stamps for the hundred and eight (108) AA-12 machine gun "receivers."

16. I completed a check in the NFRTR and was able to determine that MPS filed a Notice of Manufacturer with ATF (ATF Form 2) registering the AA-12 machine guns with serial numbers 100, 100-2, 100-3, 101, 104, 105, 109, 111, 112, 113, 114 and 115 in the NFRTR to itself as the manufacturer, knowing that it was not the actual manufacturer. Specifically, Baber completed the ATF Forms 2 stating MPS manufactured the AA-12s on the following dates: for AA-12 machine guns with serial numbers 100, 101, 104, 105, 109 - ATF Form 2 was completed on November 30, 2004, for AA-12 machine guns with serial numbers 111, 112, 113 and 114 – ATF Form 2 was completed June 5, 2005, for AA-12 machine gun with serial number 115 – ATF Form 2 was completed on August 8, 2007, and for AA-12 machine guns with serial numbers 100-2 and 100-3 – ATF Form 2 was completed on April 15, 2010.

17. On November 9, 2018, I seized the AA-12 machine guns identified with serial numbers 100-2, 100-3, 101, 104, 105, 109, 111, 112, 113, 114, 115 and one with no serial number from MPS because they were manufactured by Universal Tool, a company that was not authorized to manufacture machine guns. In addition, the AA-12 machine guns were transferred between Universal Tool, BCE, and MPS without registration and prior approval from ATF, as required under the NFA. Baber signed the ATF Form 3400.23 – Receipt of Property and Other Items for the twelve (12) AA-12, 12-gauge machine guns.

18. On that same day, Baber confirmed AA-12 machine gun with serial number 100 was in Herberth's possession.

19. On November 26, 2018, I spoke with Herberth, who confirmed the AA-12 Machine Gun 100 was in his possession. Herberth also confirmed he was not a paid MPS

employee and the AA-12 Machine Gun 100 was transferred to him without first obtaining an approved ATF Form 3.

20. On November 28, 2018, ATF Special Agents Joseph Persails and Lauren Viup met Herberth at his place of business to obtain the AA-12 Machine Gun 100. AA-12 Machine Gun 100 was registered in the NFRTR to MPS, not Steve Herberth or his company Falcon Defense Group. Herberth was not an employee of MPS. According to MPS's A&D Book, MPS transferred Machine Gun 100 to Herberth, but no date of transfer was logged in MPS's A&D Book. The transfer of AA-12 Machine Gun 100 from MPS to Herberth was not approved on an ATF Form 3. SA Persails seized AA-12 Machine Gun 100 for its involvement in multiple violations of the NFA and Herberth completed, signed and dated an ATF Form 3400.1 – Consent to Forfeiture or Destruction of Property and ATF Form 3400.23 – Receipt for Property and Other Items.

21. Between November 2018 and January 2020, I requested the ATF Firearms and Technology Branch examine a total of fourteen (14) AA-12 machine guns: the thirteen (13) AA-12 machine guns, with serial numbers 100-2, 100-3, 100, 101, 104, 105, 109, 111, 112, 113, 114, 115, Black Ops 115 and one (1) with no serial number, and one (1) of the hundred and eight (108) "receivers". All were examined by Firearms Enforcement Officer ("FEO") David Smith. FEO Smith determined all fourteen (14) were "machine guns" as defined in 26 U.S.C. § 5845(b) and the fourteen (14) machine guns did not have the markings required by 26 U.S.C. § 5842 in a location compliant with 27 CFR § 479.102. In addition, the one (1) of the hundred and eight (108) "receivers" was examined and determined to be the "receiver" of the machine gun; therefore it is a "machine gun" as defined in 26 U.S.C. § 5845 (b) and being a machine gun, is

also a "firearm" as defined in 26 U.S.C. § 5845(a)(6) and it was not marked in accordance with 27 CFR § 478.92, 26 U.S.C. 5842, and 27 CFR § 479.102.

22. In November of 2018, I completed a Federal Licensing Records Search in the Federal Licensing System ("FLS") and confirmed that Universal Tool had never had a Type 07 Manufacturing Federal Firearms License. I also confirmed with the ATF National Firearms Act (NFA) Branch that Universal Tool and the owner, Manuel Abraham, had not received approval to make and/or register NFA weapons. All of the AA-12 machine gun "receivers" were therefore manufactured by Universal Tool in violation of 26 U.S.C. § 5861(a), which prohibits anyone from engaging in the business of manufacturing NFA Firearms without paying the SOT and registering with the Attorney General as required by 26 U.S.C. § 5801 and 5802. In addition, by making the machine guns without ATF's approval, Universal Tool violated 26 U.S.C. § 5861(f), which prohibits anyone from making an NFA firearm in violation of statute. Universal Tool also failed to serialize and mark the machine gun "receivers" as required by 26 U.S.C. § 5842 and 27 C.F.R. § 479.102 and failed to register them in the NFRTR as required by 26 U.S.C. § 5841 and 27 C.F.R. § § 479.101 and 479.103. For those same reasons, Universal Tool violated 26 U.S.C. § 5861(c), which prohibits anyone from receiving or possessing a firearm made in violation of the statute.

23. Universal Tool's subsequent transfer of the machine gun "receivers" to BCE without ATF's approval violated 26 U.S.C. § 5861(e), which prohibits anyone from transferring an NFA firearm in violation of the statute. Finally, Universal Tool's delivery of the machine gun "receivers" to BCE violated Title 26 U.S.C. § 5861(j), which prohibits the delivery of unregistered NFA firearms.

24. I also have reviewed records relating to transactions completed with MPS and BCE. Those records revealed a work order, placed by MPS with Universal Tool for the manufacture of receiver plates. The receiver plates were manufactured, then shipped on January 8, 2002, from Universal Tool directly to BCE. The receipt showed the items were paid for by Jerry Baber, c/o Boje Cornils /BCE and then delivered to BCE.

25. On September 12, 2019, I interviewed the current owner of Universal Tool, Jaime Abraham ("Jaime"), with his attorney Steve Finney at 302 Sunset Drive, Suite 111, Johnson City, Tennessee. Jaime stated his father, Manuel Abraham ("Manny"), was the owner when this transaction occurred. The business was located at 3204 Hanover Road, Johnson City, Tennessee, but had moved to 2304 Silverdale Drive, Suite 300, Johnson City, Tennessee. Jaime stated records from back in the early 2000 were hard to find. Jaime confirmed the paperwork he could locate showed that a job order was completed by Universal Tool in January of 2002 for Gerald Baber, MPS. The paperwork included the time sheets, the job order placed in December of 2001, the invoice for the steel, certification of the steel, Boje's contact information, the invoice paid by Gerald BABER and the package slip showing sold to Gerald BABER and then shipped c/o to Boje Cornils/BCE and signed as received by BCE on January 8, 2002 by Wayne Kirk, employee for BCE. Jaime also confirmed neither his father nor Universal Tool had ever obtained a Type 07 Manufacturing FFL.

26. On September 26, 2019, I re-interviewed Boje. Boje again stated all the AA-12 "receivers" were manufactured by Universal Tool located in Johnson City, Tennessee by Manny Abraham. Baber/MPS ordered the "receivers" and Universal Tool shipped them directly to BCE or to MPS and Boje would pick them up from MPS. Boje re-confirmed he assembled "all" of the AA-12 machine guns at his place of business in Russellville, TN.

27. MPS contracted with another entity, Universal Tool to manufacturer the "receivers." Universal Tool was not an FFL/SOT. Universal Tool manufactured hundreds of the AA-12 "receivers" without ATF's approval, without serializing or marking them as required by the NFA and without registering them in the NFRTR. Universal Tool then transferred the "receivers" to BCE (either directly or through MPS) without ATF's approval. BCE violated 26 U.S.C § 5861 (b), (c) and (d) for receiving and possessing NFA firearms made in violation of the statute. BCE also violated 26 U.S.C. § 5861(i) when it received and took possession of the "receivers" that were not identified by a serial number. BCE then assembled the AA-12 machine guns with additional parts provided by MPS into fully functioning AA-12 machine guns. The act of assembling "receivers" into fully functioning AA-12 machine guns is an act of manufacturing that required an FFL/SOT. BCE became an FFL on October 1, 2009, but did not become an SOT until 2011. BCE assembled all of the AA-12 machine guns included in this complaint before becoming an SOT. BCE marked some of the AA-12 machine guns, but did so in the improper location, on the structural grip bracket, not the "receiver." BCE also identified MPS as the original manufacturer. BCE then violated 26 U.S.C. § 5861(e) and (f) when they transferred and delivered the unregistered AA-12 machine guns to MPS.

28. MPS violated 26 U.S.C. § 5861(b), (c), (d) and (j) when it received and possessed the AA-12 machineguns that were: (1) made in violation of the statute; (2) transferred to it in violation of the statute; (3) not yet registered in the NFRTR; and that (4) had not been registered at all. MPS's receipt and possession of the AA-12 machine guns also violated 26 U.S.C. § 5861(i) because they were not identified by a serial number as required by NFA, on the frame or receiver as required by 27 C.F.R. § 479.102. Finally, MPS violated 26 U.S.C § 5861(l) which prohibits anyone from knowingly making, or causing to be made, a false entry on any

application, return, or record required by NFA. MPS filed a notice of manufacturer with ATF (ATF Form 2) registered them in NFRTR to itself as the manufacturer, knowing that it was not the manufacturer.

29. As stated above, one must have a Type 07 Federal Firearms License ("FFL"), pay a Special Occupational Tax ("SOT"), and register as a manufacturer with the Attorney General "to engage in the business of manufacturing" machine guns. 26 U.S.C. §§ 5801 and 5802; 27 C.F.R. § 479.31; 18 U.S.C. § 923(a). Manufacturers must engrave or stamp a unique serial number on the machine gun frame or receiver in a manner not readily susceptible to obliteration or alteration, and mark the frame, receiver, or barrel with manufacturer identification. 26 U.S.C. § 5842(a); 27 C.F.R § 479.102. Once manufactured, they must report the manufacturer and register the machine gun in the NFRTR by filing a notice with the ATF (ATF Form 2) providing the serial number and other marks of identification, and they must file that notice by the "close of the next business day." 26 U.S.C. § 5841(b); 27 C.F.R § § 479.101 and 479.103. Manufacturers must then file an application to transfer the machine gun to another FFL/SOT or government agency. 26 U.S.C. §§ 5812, 5841 (b) and (c), and 5861 (d). Approval of the transfer removes registration of the machine gun from the manufacturer and registers it to the transferee. The manufacturer cannot transfer a machine gun until the ATF approves the transfer. A transfer includes any "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of an NFA firearm." 26 U.S.C. § 5845 (j). Further, it is unlawful for "any person ... to ... possess a firearm [as defined in 26 U.S.C. § 5845] which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Pursuant to 26 U.S.C. § 5872, any firearm involved in any violation of 26 U.S.C. Chapter 53, shall be subject to seizure and forfeiture. By reason of the facts set forth and incorporated herein, the defendant properties are properly condemned as forfeited to the United States of America pursuant to 26 U.S.C. § 5872.

30. I have probable cause to believe the defendant properties were manufactured and transferred in violation of the NFA and are forfeitable under 26 U.S.C. § 5872.

All of the above information is true and correct to the best of my knowledge.

FURTHER, YOUR AFFIANT SAYETH NOT.

Rebecca Bobich
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

STATE OF TENNESSEE

COUNTY OF KNOX

On this 24th day of May 2022, before me, personally appeared Rebecca Bobich, in her capacity as a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

Subscribed to and sworn before me on this this 24th day of May 2022.

JEANETTE E. SOREY
STATE OF TENNESSEE
NOTARY PUBLIC
KNOX COUNTY

NOTARY PUBLIC

My Commission Expires: 03/07/2026